214          SUPREME COURT OF LOUISIANA.

City of New Orleans vs. Comptoir National DeEscompte DeParis.

No. 13,462.

CITY OF NEW ORLEANS VS. COMPTOIR NATIONAL D'ESCOMPTÉ DE PARIS.

SYLLABUS.

The gross profits of the business of borrowing and loaning money by an agent or intermediary, are the commissions or charges that are paid by the borrower over and above the amount that is expended in negotiating the loan.

One engaged in procuring exchange on foreign banks for the use of local customers, and in so doing pays a discount and charges same to the customer, in addition to his commission, is not entitled to any share in the discount, and same constitutes no portion of his gross profits.

A PPEAL from the Civil District Court, Parish of Orleans—*King, J.*

*Samuel L. Gilmore,* City Attorney, (*Charles H. LaVillebeuvre,* of Counsel), for Plaintiff, Appellant.

*Harry H. Hall,* for Defendant, Appellee.

The opinion of the court was delivered by

WATKINS, J.   On the 29th of December, 1899, the city treasurer proceeded by rule against the respondent for the payment of a license for the year 1899, of $5,500, for pursuing the business of banking—alleging that its "gross profits in said business for that year were more than $220,000," and that it was a license delinquent.

Respondent, in answer to the rule, averred that this court had decided in State of Louisiana vs. Comptoir National D'Escompte De Paris, 51 Ann. 1272, that it was not engaged in a banking business, but was engaged in loaning money and dealing in exchange.

But, if plaintiff's rule be taken as a proceeding against it as being engaged in the business of lending money, or dealing in exchange, the respondent avers that it has duly paid its licenses to the city and State therefor, and holds proper receipts for same—the sum of one thousand dollars having been paid to each.

It further avers, that having complied fully with all the requirements of Act 127 of 1898, and city ordinance No. 14,872, nothing further is due, and the city treasurer should take nothing by his action, and his rule should be discharged.

On the trial in the lower court, the respondent was discharged, and the plaintiff in rule has appealed.

In the case cited by the respondent in its answer, this court decided that it was not engaged in conducting a banking business, and both parties have proceeded on the theory that it is engaged in lending money and dealing in exchange, and the plaintiff's demand is limited to that issue.

Whilst admitting the payment of a city license by the respondent on the business of lending money and dealing in exchange, the amount paid is not sufficient in amount.

The language of the city ordinance is, "that all banks, banking associations, corporations or companies who may * * * engage in this city, in the business of lending money, or dealing in exchange, shall pay a license of two and one-half *per cent.* on the gross profits of all money loaned and all exchange bought or sold," etc.

The principal question is, what are the gross profits of respondent's business?

The argument of plaintiff's counsel is as follows, viz:

" Mr. Breton, the manager of the Comptoir d'Escompte, and the sole " witness in the case, testifies that he lends money and deals in ex- " change. Rec. pp. 9-10. When asked how much interest he collected " or charged to other persons, and what was the credit of the interest " account during the year 1898, he said $44,633.01. Again, when in- " terrogated as to his revenue from exchange account for the same " year, the response was $16,268.24. Now these two amounts aggregate " the sum of $60,906.25 of *gross profits,* and two and one-half *per cent.* " on that amount being $1522.65, there remains due to the city by de- " fendants (they having already paid $1000) the sum of $522.65."

On the other hand, the argument of respondent's counsel is of the following tenor, viz:

" Defendant's gross profits during the year aggregated $16,946.19— " *i. e.,* $16,286.24 in its exchange business and $677.95 in interest—and " it paid the minimum license of $1000 upon $40,000 of gross profits.

" The $677.95 were the gross profits of its interest account. The sum

" was the gross amount which it earned, undiminished by the cost of
" carrying on its business, such as rent, clerk hire, etc. If a man asks
" me to loan him $10,000 at 5 *per cent.* interest, and I go to a bank and
" agree that such bank may furnish the money needed and shall have of
" the interest 4 *per cent.* while I shall receive the remaining 1 *per cent.,*
" that 1 *per cent.,* $100, represents my gross profits in the transaction.
" Even if I borrowed in my own name a specific sum of $10,000, paying
" therefor $400, and loaned it for $500, from no possible point of view
" could my profit, gross or net, be more than $100.

" Because defendant *collected* $44,060.01 of interest, of which amount
" it had already paid out in discount $43,960.06, counsel contends that
" the *collection* is *profit,* thereby confounding *receipt* with *profit.*
" Profit can never mean anything but *gain.*

" If a man adventures $10,000 in a speculation, and there comes back
" to him only his $10,000, this is not his *gross* profits, nor indeed any
" profit at all. If a man pays out in discounted interest $43,960.06,
" and there comes to him of that transaction, $44,638.01, his *gross*
" *profit* is $677.95."

Again:

" Defendant's books produced in court show that during the entire
" year of 1898, it collected $44,638.01 of interest. Its revenues from
" exchange was $16,286.24, which represents its profit in that branch of
" a business. The $44,638.01 appearing in the ledger interest account
" does not represent defendant's gross profit of interest, but that de-
" fendant's gross profit was $677.95, being the difference between inter-
" est paid out by it and interest received by it.

" Witness explains that when defendant lends money, it draws a bill
" of exchange upon which one of the local banks advances the money,
" which defendant pays to the borrower. The bank which furnishes
" the money upon defendant's bills of exchange, charges defendant in-
" terest for that money, and defendant charges interest to the borrower
" to whom it pays the money. Defendant's gross profit is *its share* of
" this interest."

The representative of the respondents as a witness, explains its opera-
tions, and says, that notwithstanding there was purchased foreign ex-
change which resulted in the collection of $44,638.01, during the year,
yet it expended $43,960.06 in discount, and left only $677.95 as its total
or gross profits.

The contention of plaintiff's counsel, on the other hand, is that the $44,638.00 represents the respondent's gross profits upon which its license should be calculated.

The manager of the company, in the course of his interrogation, made the following responses, viz:

" Q.—Mr. Breton, how much money did you lend out during the year 1898?

\*      \*      \*      \*      \*      \*      \*      \*

" A.—$44,638.01.

" Q.—What was your revenue from exchange account during that year?

" A.—$16,268.24.

\*      \*      \*      \*      \*      \*      \*      \*

" Q.—The exchange account $16,268.24 represents your profit in exchange account?

" A.—Yes, sir.

" Q.—The $44,638.01 in your interest account—what does that represent?

" A.—Amount of interest collected here and elsewhere.

" Q.—Does that represent your gross profit?

" A.—No, sir.

" Q.—Why not?

" A.—Because, if I borrowed money in New York, or London, they charged me interest. My profit is the *difference* between the two rates." (Our italics.)

On the pleadings as interpreted by the testimony of this witness, the question at issue was, by the judge *a quo*, decided in favor of the respondent, and we think correctly.

While the transactions of the respondent, in borrowing and lending money, were large, yet in the course of its negotiations abroad, it had to expend large sums, whereby its profits were greatly diminished; and in those expenditures it had no interest.

As respondent was simply an intermediary between the foreign banks that loaned the money, and its local customers, who were the borrowers, its commissions were small.

We think the case was correctly decided.

Judgment affirmed.

Rehearing refused.